Opal MADDEN, Plaintiff–Appellant,

v.

C & K BARBECUE CARRYOUT, INC.,
and Ozzie Carr,
Defendants–Respondents.

James DECKER, et al.,
Plaintiffs–Appellants,

v.

GRAMEX CORPORATION, et al.,
Defendants–Respondents.

Nos. 70263, 70248.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1988.

Rehearing Denied Oct. 18, 1988.

William Taylor, St. Louis, for Opal Madden.

Jeffery L. Cramer, Joan M. Holt, St. Louis, for C & K Barbecue Carryout, Inc.

Alan J. Agathen, Walter L. Floyd, St. Louis, for James Decker, et al.

Hardy C. Menees, Clayton, for Gramex Corp.

Gary P. Paul, Clayton, for Schnucks Twenty-Five, Inc.

James C. Swearengen, Mark W. Comley, Barry V. Cundiff, Jefferson City, for amici Missouri Retailers Ass'n and Missouri Grocers' Ass'n.

BILLINGS, Chief Justice.

These two cases have been consolidated for purposes of appeal. In *Madden v. C & K Barbecue Carryout, Inc.*, plaintiff's cause of action was dismissed for failure to state a claim. In *Decker v. Gramex Corporation*, plaintiffs' case was dismissed on motion for summary judgment. The Court concludes that the petition in Madden was sufficient to withstand a motion to dismiss, and that the affidavits in the Decker case, broadly construed, demonstrate the presence of a fact issue of negligence. Reversed and remanded.

## THE MADDEN CASE

At approximately 7:00 p.m. on December 15, 1984 the plaintiff Opal Madden drove into the parking lot of C & K Barbecue to purchase food. C & K Barbecue is located in the City of St. Louis. Upon leaving the restaurant, Madden was approached by an unknown male requesting a jump start for his car or a ride to his home. For several minutes Madden tried to evade this man, but he displayed a gun, forced his way into Madden's car, and kidnapped her. The pair drove to another location where Madden's unknown assailant physically and sexually assaulted her.

Plaintiff brought a negligence action against C & K Barbecue in the Circuit Court of the City of St. Louis seeking damages for personal injuries sustained as a result of the assault and kidnapping. She contended defendant failed to provide adequate security to protect its patrons and failed to warn business invitees of the danger present on the premises. In her first amended petition plaintiff alleged C & K Barbecue was the scene of numerous violent crimes over the three year period immediately preceding this assault. These crimes included six armed robberies, six strong arm robberies, one assault, and one purse snatching. Plaintiff's amended petition, however, was dismissed by the trial court for failure to state a claim.

## THE DECKER CASE

On December 14, 1982 Gary and Donna Decker were Christmas shopping at a shop-

ping center in north St. Louis County containing a Schnucks market and a Grandpa Pigeon's department store. Upon returning to their car, they were forcibly abducted by two unknown assailants in the shopping center parking lot. The Deckers were both murdered after leaving the shopping center with their assailants. Donna Decker was raped and sodomized before she was killed. Both bodies were dumped in a vacant field in East St. Louis.

The son and the parents of Gary and Donna Decker filed a suit for wrongful death against Schnucks Twenty–Five, Inc. and Gramex Corporation, the owners and operators of Schnucks and Grandpa Pigeon's. They alleged defendants were negligent for failing to provide adequate security in the parking lot area, for failing to protect Gary and Donna Decker from criminal assault, abduction, and murder, and for failing to warn the Deckers of the danger of being abducted, robbed, or killed while walking in the parking lot.

Plaintiffs pleaded a history of prior crime on or about the premises of the defendants prior to the Decker murders. These crimes included one armed robbery, one purse snatching, and 45 assorted thefts. Based on these facts, plaintiffs contended that the defendants owed Gary and Donna Decker, as business invitees, a duty to exercise reasonable care for their safety while on the defendant's premises.

Defendants filed a motion for summary judgment on the ground that Missouri law did not recognize a duty on the part of a business owner to protect his patrons against the criminal conduct of unknown third persons. Plaintiffs filed an affidavit in opposition to summary judgment. In this, William J. Cira, police chief of Bellefontaine, stated that he reviewed the records of crimes committed on the premises of Grandpa Pigeon's and Schnucks during the three years preceding the Decker murders. According to Cira, these crimes included four armed robberies, three purse snatchings, robbery second degree, attempted armed robbery, assault, assault with a deadly weapon, flourishing a deadly weapon, stealing over purse snatching [sic], and attempted purse snatching. The trial court sustained the motion for summary judgment.

## I.

In reviewing a motion to dismiss for failure to state a claim, this Court accepts as true all facts properly pleaded and all reasonable inferences therefrom. *Stiffelman v. Abrams*, 655 S.W.2d 522, 525 (Mo. banc 1983). A petition is not to be dismissed for failure to state a claim if any set of facts is asserted which, if proved, would entitle the plaintiff to relief. *White v. Mulvania*, 575 S.W.2d 184, 188 (Mo. banc 1978).

On review of defendants' motion for summary judgment, this Court must view the record in the light most favorable to the plaintiffs, according to plaintiffs all reasonable inferences which may be drawn from the evidence. Summary judgment is inappropriate unless the defendants have shown by unassailable proof that they are entitled to judgment as a matter of law. The burden is on the defendants to demonstrate that there are no genuine issues of material fact. A genuine issue of fact exists when there is the slightest doubt about a fact. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987).

## II.

A petition seeking damages for negligence must allege ultimate facts which, if proven, show: 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, 2) breach of that duty, 3) causation, and 4) injury to the plaintiff. *Virginia D. v. Madesco Investment Corporation*, 648 S.W.2d 881, 886 (Mo. banc 1983); *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). Generally, there is no duty to protect business invitees from the criminal acts of unknown third persons. *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo.App.1983). However, a duty to exercise care may be imposed by common law under the facts and circumstances of a given case. *Scheibel v. Hillis*, 531 S.W.2d at 288.

*Section 344* of the *Restatement (Second) of Torts* recognizes a duty on the part of a possessor of land who holds it open to the public for entry for business purposes to protect members of the public while they are on the land from the intentionally harmful acts of third persons or in the alternative to warn visitors so that they can avoid the harm. Under the restatement approach, this duty may arise when the landowner knows or has reason to know from past experience that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of visitors, even if the landowner has no reason to expect harmful conduct on the part of any particular individual. *Restatement (Second) of Torts, Section 344, Comment f.*

Several cases decided by the court of appeals have recognized a duty on the part of business owners to protect their invitees from the criminal activities of unknown third persons under certain special circumstances. *See Faheen v. City Parking Corp,* 734 S.W.2d 270, 272 (Mo.App.1987); *Brown v. National Supermarkets, Inc.,* 679 S.W.2d 307, 309 (Mo.App.1984); and *Nappier v. Kincade,* 666 S.W.2d 858, 861 (Mo.App.1984). In *Brown,* the court held that sixteen reported robberies involving a firearm, seven reported strong arm robberies, and 136 other reported crimes allegedly occurring on the defendant's premises over a two year period constituted special facts giving rise to a duty to protect patrons from the criminal assaults of unknown third parties. *Brown,* 679 S.W.2d at 309–10.

In *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881 (Mo. banc 1983), this Court recognized a duty on the part of a hotel owner to protect hotel guests from the criminal acts of unknown third persons. The recognition of a duty in *Virginia D.* was based in part on the existence of a special relationship between the plaintiff and the defendant, *i.e.,* innkeeper-guest, but it was also based in part on the existence of special facts, *i.e.,* evidence of prior criminal incidents sufficient to alert management to the possibility that its patrons might be in danger. Id. at 888.

Consistent with the holding in *Virginia D.,* with the court of appeals decision in *Brown,* and with the rule established by the *Restatement of Torts,* [1] the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case. The touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Lowery v. Horvath,* 689 S.W.2d 625, 627 (Mo. banc 1985).

### III.

In the Madden case, the plaintiff alleged in her amended petition that the defendant's restaurant was the scene of numerous violent crimes against persons during the three year period immediately preceding this incident. These crimes included six armed robberies, six strong arm robberies, one assault and one purse snatching. These facts, if established at trial, are sufficient to put the defendant on notice to the possibility that his invitees may be exposed to danger from the criminal attacks of unknown third persons, including the danger of kidnapping and assault.[2] Since the plaintiff alleged facts

---

1. *See also Galloway v. Bankers Trust Co.,* 420 N.W.2d 437 (Iowa 1988), where the court held that evidence of a general history of criminal activity was sufficient to preclude a grant of summary judgment in favor of a shopping mall in an action brought against the mall for failing to protect plaintiff from a homosexual rape.

2. Defendants in both cases cite *Faheen v. City Parking Corp.,* 734 S.W.2d 270, 274 (Mo.App. 1987), for the proposition that the prior crimes in these cases were not sufficiently similar to

the crimes at issue to put the defendants on notice that the crimes at issue might occur. *Faheen* held that prior reported crimes of arson, robbery, assault, burglary, and stealing were not sufficient to put defendants on notice that a car bombing would take place in their parking garage. *Faheen* is distinguishable, however, by the fact that the victim in *Faheen* was murdered by a hired assassin. An assassination by car bombing may not be reasonably foreseeable to a business owner based on prior incidents of vio-

which, if proven, are sufficient to establish a duty of care, the trial court erred in dismissing her first amended petition.

■ In the *Decker* case, plaintiffs pleaded a history of prior crimes occurring on the defendants' property. These crimes included one armed robbery, one purse snatching, and multiple thefts. These allegations, by themselves, even if established at trial, might not be sufficient to establish a duty of care. However, plaintiffs also filed an affidavit in opposition to summary judgment, citing a lengthy list of prior crimes, many violent, occurring at the shopping center over a three year period. The list included four armed robberies, assault, assault with a deadly weapon, and flourishing a deadly weapon. Defendants contend that this affidavit was improper under *Rule 74.04(e)* because the crimes listed were not based on the affiant's personal knowledge. Although the affiant stated that he reviewed the Bellefontaine police records to locate information concerning prior crimes occurring at the defendants' shopping center, he also stated that the facts listed in the affidavit were based on personal knowledge. Nothing in defendants' motion for summary judgment contradicts this assertion, and there is nothing in the record indicating that the volume of police records was so great that the affiant could not have personal knowledge of the prior crimes discussed. For purposes of summary judgment the affiant's statements must be accepted as true. *Shaw v. Clough,* 597 S.W.2d 212, 218 (Mo.App. 1980).

■ The facts alleged in the affidavit, if established at trial, are sufficient to establish a duty of care on the part of defendants to take reasonable measures to protect their invitees from third party criminal attacks. Whether the defendants satisfied this duty of care is a question for a jury. On remand, the trial court should give plaintiffs the opportunity to amend their petition to include the facts alleged in the affidavit. *Feinstein v. McGuire,* 297 S.W.

2d 513, 518 (Mo.1957); *Nappier v. Kincade,* 666 S.W.2d at 862.

Defendant Schnucks also contends that it owed no duty to the Deckers because the Deckers were not business invitees of Schnucks and because Schnucks did not lease or control the parking lot where the Deckers were abducted. Schnucks, however, did not establish these facts by unassailable proof. Plaintiffs properly pleaded that the Deckers were customers and invitees of Schnucks and that Schnucks leased and controlled the parking lot at the shopping center. Based on the record presented, genuine issues of material fact remain on these questions precluding a grant of summary judgment. *Gast v. Ebert,* 739 S.W.2d at 547.

Reversed and remanded for further proceedings.

BLACKMAR, RENDLEN and HIGGINS, JJ., concur.

ROBERTSON, J., concurs in result in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinion of DONNELLY, J.

ROBERTSON, Judge, concurring in result.

These cases come to this Court on dismissal and summary judgment. As a result, the only issue properly before the Court is a single, theoretical one: whether a duty arises "when the landowner knows or has reason to know from past experience that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of visitors...." (Maj op. at 62). To the extent that the Court decides that a duty exists in these cases on the bare record before us, I believe the Court errs. For the reasons which follow, I do no more than concur in the result reached by the Court.

---

lent street crime, but abduction, sexual assault, and even murder committed by use of a firearm

should be foreseeable based on such street crimes.

## I.

Both those who praise and those who criticize the tort system acknowledge that it provides compensation to injured individuals.

Arising out of the various and ever-increasing clashes of the activities of persons living in a common society, carrying on business in competition with fellow members of that society, owning property which may in any of a thousand ways affect the persons or property of others —in short, doing all things that constitute modern living—there must of necessity be losses, or injuries of many kinds sustained as a result of the activities of others. The purpose of the law of torts is to adjust these losses, and to afford compensation for injuries sustained by one person as a result of the conduct of another.

Wright, Introduction to the Law of Torts, 8 Camb.L.J. 238 (1944) cited in Prosser and Keeton, Torts, 6 (1984).

Awards of compensation provide economic incentives both for injured persons to seek redress from those who may be at fault and for potential tortfeasors to regulate their activities to avoid injuring others. Thus, an important by-product of the system is its ability "to generate rules of liability that if followed will bring about, at least approximately, the efficient—cost-justified—level of accidents and safety." Posner, "A Theory of Negligence", 1 J. Legal Stud. 29, 33 (1972).

This argument is not original with Posner. It finds earlier expression in the words of Learned Hand in *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir.1940). There Hand asserts:

[T]he owner's duty ... to provide against resulting injuries is a function of three variables: (1) The probability that [the barge] will break away; (2) the gravity of the resulting injury, if she does; (3)

the burden of adequate precautions. Possibly it serves to bring this notion into relief to state it in algebraic terms: if the probability be called P; the injury, L; and the burden, B; liability depends upon whether B is less than L multiplied by P: i.e., whether $B < PL$.

For Hand, duty thus turns on whether the burden of taking precautions is less than the expected value of the harm; liability exists to the extent that a defendant fails to undertake cost-effective precautions. Stated another way, Hand's formula seems to say that negligence exists when those who are in the most-efficient position to avoid accidents fail to do so.

This method of analysis (which is certainly more complex than is set out here) has been dubbed "law and economics". To its credit, law and economics has been criticized both by those who argue that the tort system favors plaintiffs and those who believe it tilts toward defendants. While I harbor no illusions that law and economics is the holy grail of tort law[1], it is nonetheless helpful in analyzing cases such as this one which present particularly troubling choices. It is helpful because it allows us to consider cases from a neutral perspective and ex ante, with a view toward determining appropriate rules of law which generate cost-effective behaviors within society. By focusing on these neutral considerations we are freed, to some extent, from the condemnation leveled by those who argue that we now compensate injury without regard to fault. In my credo, the tort system serves responsibly only when it requires a finding of fault as a necessary predicate to any award of compensation.

Considering the cases at bar ex ante, the potential burdens which might be placed on the proprietor if he were required to take steps to avoid foreseeable injury to his

---

**1.** In his seminal article, Guido Calabresi acknowledged that his paper would "deal in theory—often unfortunately, in the most dismal of theories, economics." He expressed the hope, however, that his words would be "intelligible to law teachers, if not to lawyers, and without the suicidal desire of the economist to make his theory so pervasive and detailed that it is rendered utterly useless to the lawyer who lives in the world of men, and even to the law teacher, wherever he lives." Calebresi, "Some Thoughts on Risk Distribution and the Law of Torts," 70 Yale Law Journal 499, 500 (1961).

invitees are obvious;[2] these include installation of fencing and lighting, and/or the posting of guards.[3] These are not insubstantial burdens to place on a person who or entity which seeks to maximize the profit of an enterprise; such a duty cannot be lightly imposed. Yet between the proprietor and his invitee, the former is in the best position to take measures to avoid the injury, provided that the likelihood of injury is reasonably foreseeable. The cost of the measures can be spread over the proprietor's entire product and customer base.

One can argue that a potential customer who knows of crime problems in the area has the option of refusing to patronize the store. To overcome this resistance, however, the proprietor has invited, and perhaps through aggressive advertising, has enticed persons to ignore that fear of doing business with him. Once that customer decides to come to the store, aside from keeping a careful look out, he or she is not in a position to take further preventive measures.

It is not enough to say that the proprietor can bear the burden of prevention more readily than the invitee. Before we may properly impose that duty under the circumstances of these cases, we must determine that it is cost effective to do so. Whether the burden of prevention is cost effective is a function of the probability of harm; probability is thus essentially a question of foreseeability. We do not impose a duty on store owners to insure the safety of patrons generally. Instead, the imposition of that duty is both proper and cost effective only to the extent that the proprietor has both reasonable notice that his invitees face danger under similar circumstances and that the cost of prevention is less than the expected value of the harm.

I thus have no difficulty with the theoretical proposition advanced by the Court that under the proper factual circumstances a proprietor owes a duty to his invitees where the risk of harm is foreseeable and the risk of substantial injury great. This view is neither radical nor new; it follows long accepted, traditional concepts of tort law. "Duty ... is measured by the scope of the risk which negligent conduct foreseeably entails." James, Scope of Duty in Negligence Cases, 47 Northwestern L.Rev. 778, 781 (1953). "As a general proposition, a duty of care which is imposed by the law of negligence arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985).

The Court goes too far, however, when it claims that a duty of care exists if the facts pled by Madden and alleged in the Decker affidavits are established at trial. In my view, whether the incidents of crime which occurred at these locations were of such a frequency and of such a similar nature as to make the matters which are the subject of these actions foreseeable—and thus establish a duty of care—is a question we leave for the trial judge after all the facts are fully developed.

Foreseeability is a function of the unique facts which obtain in each case. Whether the proprietor had notice of the crimes, the nature of the steps taken, if any, to avoid crime, the type of crimes committed, the number of crimes per customer visit, the

---

**2.** The Court's opinion appears to adopt the Restatement (Second) of Torts, § 344 approach, which states that it may be a sufficient fulfillment of the duty imposed for an entity to do no more than warn its customers of potential danger.

**3.** The adequacy of precautions is always a difficult question. After an injury has occurred, it is obvious to all that the precautions were inadequate to prevent that injury. I am not willing to say, however, that injury proves the inadequacy of steps taken to meet a duty of care imposed by the law. As one court has wisely noted:

> In this day of an inordinate volume of criminal activity, there are a myriad of "security devices" available ..., including the hiring of armed guards. No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation. While bright lights may deter some, they will not deter all. Some persons cannot be deterred by anything short of impenetrable walls and armed guards.

*7735 Hollywood Boulevard Venture v. Superior Court*, 116 Ca.App.3d 901, 172 Cal.Rptr. 528, 530 (1981).

time of day any prior crimes occurred—these and many other relevant considerations—all assist in determining the foreseeability of the injuries sustained in a given case.

These cases are often emotionally charged and pit an individual against a large, deep pocket defendant. But foreseeability must never be measured after the fact; when an injury has occurred, whatever precautions were taken were (obviously) inadequate to prevent that injury. We properly leave to our learned trial bench the responsibility to determine, subject to appellate review, whether a duty exists and thus a submissible case made within the context of the entire set of facts developed at trial.

In sum, I agree with the Court that these cases do assert a set of facts sufficient to survive a motion to dismiss or a motion for summary judgment. Whether the facts alleged in the petitions in these cases make a submissible case after a full development of the facts is a matter for the trial court. But the Court's language concluding that the duty exists if the facts pled are proved goes much farther than simply holding that these cases can survive motions for summary judgment and to dismiss. On the bare record before us, no such determination can be properly made.

DONNELLY, Judge, dissenting.

In my view, the majority errs when it holds that owners of property may be found liable for criminal acts of unknown third persons. To borrow from Holmes:

> I assume that common-sense is opposed to making one man pay for another man's wrong, unless he actually has brought the wrong to pass according to the ordinary canons of legal responsibility,—unless, that is to say, he has induced the immediate wrong-doer to do acts of which the wrong, or, at least, wrong, was the natural consequence under the circumstances known to the defendant.

Holmes, *Agency*, 5 Harv.L.Rev. 1, 14 (1891).

In 1977, H.L.A. Hart portrayed the extremes in American jurisprudence as "the Nightmare and the Noble Dream." The Nightmare is when, "in spite of pretensions to the contrary, judges make the law which they apply to litigants and are not impartial, objective declarers of existing law." The Noble Dream is when the expectation of litigants is "that judges should apply to their cases existing law and not make new law for them * * *." Hart, *American Jurisprudence Through English Eyes: The Nightmare and the Noble Dream*, 11 Ga. L.Rev. 969, 971, 973, 978 (1977).

In *Kelly v. Benas*, 217 Mo. 1, 9, 116 S.W. 557, 559 (1909), this Court declared "that there must be a duty raised by the law and breached by the defendant before an action for negligence lies."

Today, "the Court recognizes that business owners may be under a duty to protect their invitees from the criminal attacks of unknown third persons depending upon the facts and circumstances of a given case." It must be conceded that the Court implants a duty on the part of business owners not heretofore raised by the law. In my view, the Court thereby *makes* the law and departs from the judicial process. *See* Mo. Const. art. II, § 1. But, of course, this has been going on for some time. *See Jackson v. Ray Kruse Construction Company, Inc.*, 708 S.W.2d 664, 671, 672 (Mo. banc 1986) (Donnelly, J., dissenting). In such circumstance the questions are: Is it right? Is it good?

Historically, Missouri public policy has been to seek to prevent crime through utilization of public police forces financed by tax money. Today the Court opts for crime prevention in business localities through utilization of private police forces financed by consumers through higher prices.

I do not know which is right and good. But I am not disconsolate. I do not believe that the people expect judges to decide such questions of public policy. They are for the General Assembly.

I respectfully dissent.

WELLIVER, Judge, dissenting.

I respectfully dissent and concur in the dissent of Donnelly, J.

On April 26, 1983, this Court tested the water on making Missouri citizens liable in

damages for injuries inflicted by criminals to persons on their property. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983). Virginia D. recovered damages for rape by an assailant in a hotel restroom. While the majority indicated that they were only enlarging "inkeeper's liability," the recovery was awarded, not to a guest of the hotel, but to a patron of Mrs. Hulling's restaurant, one of the building tenants.

Today, all of the Missouri business community is clearly and unequivocally saddled with liability for criminal acts committed against persons on the property of the business. Every person in Missouri is going to find the cost of guards, security systems, and higher liability insurance premiums added to the cost of the groceries and products sold by the business establishments. All of this in addition to the taxes we pay to have the finest Highway Patrol, city and county police forces possible. As was suggested by Donnelly, J., if there be social policy or reason for making this change, it should be done by the legislature, not by the courts. No better words can be found to describe what the majority does today than the words which my brother Robertson directed at me when he felt that by an opinion I had invaded the province of the legislature.

> We have come the full circle. In doing so we prove the truth that the fruit of judicial trespass into areas properly reserved for the legislative branch of government is not a blessing, but a curse.

*Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 496 (Mo. banc 1986) (footnote omitted).

What greater curse can be cast upon Missouri property owners than that juries be permitted to assess against them damages for the acts of criminals committed against other persons on their property.

I would affirm the trial court.