# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 96-2156

———————

Dennis Johnston, Mary       *
Johnston,                    *
                        *
       Plaintiffs/Appellants,*
                        *    Appeal from the United States
    v.                    *    District Court for the
                        *    Eastern District of Missouri.
Warren County Fair Association,    *
Inc., a corporation,         *
                        *
       Defendant/Appellee.     *

———————

Submitted:  December 13, 1996

Filed:  April 1, 1997

———————

Before WOLLMAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District
     Judge.

———————

WOLLMAN, Circuit Judge.

Dennis and Mary Johnston appeal from the district court's[2] grant of summary judgment in favor of the Warren County Fair Association (Association).  We affirm.

**I.**

———————

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

The Association operates and sponsors the annual Warren County Fair (the fair). In the summer of 1988, Dennis Johnston was employed as a carnival worker by Jackson United Shows (Jackson), a corporation hired by the Association to provide carnival services at the fair. On the evening of July 6, 1988, Tony Crawford and James Muse played the carnival game Dennis was operating. Upon noticing that one of the men followed and whistled at Mary throughout the evening, Dennis reported this "pestering" conduct to a police officer.

Toward the end of the evening Crawford and Muse, apparently drunk, again wanted to play Dennis's game and became angry when they did not receive prizes, even though Dennis had told them before they played that all the prizes were gone. Although Dennis refunded their money, Crawford and Muse remained upset, calling Dennis obscene names and threatening to "whip [his] ass." Upon noticing the disturbance, another Jackson employee told Crawford and Muse to leave. Dennis then shut down the game. He told a police officer he was "having a problem with a couple of guys at [his] game earlier that night," but he "didn't say anything [to the officer] about [Crawford and Muse] threatening [him]."

After turning in his receipts for the night, Dennis joined Mary, and the couple walked around the fairgrounds, eventually sitting down on the bleachers near the area where events such as tractor pulls were held. After the Johnstons had sat a "good while," Crawford and Muse approached them. Both men attacked Dennis, striking him in the head with a tire iron and perhaps also with a claw hammer.

The Johnstons, citizens of Illinois, filed this diversity action, alleging that the Association was negligent in failing to

provide adequate security services.  In granting the Association's motion for summary judgment, the district court held that the Association had no duty to protect Dennis from the assault.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court and will affirm if the facts, viewed in the light most favorable to the nonmoving party, show no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  See Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 466 (8th Cir. 1996).

To prevail on their negligent failure to protect claim against the Association, the Johnstons must show that (1) the Association had a duty to protect Dennis; (2) it breached that duty; and (3) the breach caused the Johnstons' injuries.  See Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 61 (Mo. 1988) (en banc).  The Johnstons recognize that the owner of business property generally has no duty to protect business invitees from intentionally harmful acts of third parties.  See id.  They contend, however, that "special facts and circumstances" existed which created such a duty.  See id. at 61-62.

The special facts and circumstances exception encompasses two theories.  The "known third person" theory holds an owner of business property liable if the injury was intentionally inflicted by a third person whom the owner knows to be violent, or by a person whose conduct indicates potential danger.  See Groce v. Kansas City Spirit, Inc., 925 S.W.2d 880, 885 (Mo. Ct. App. 1996).  The "prior violent crimes" theory holds an owner of business property liable when numerous and recent occurrences of violent

crimes by unknown assailants, similar to the incident in question, would have given the owner reason to know that similar incidents were likely to occur.  See id.; Keenan v. Miriam Foundation, 784 S.W.2d 298, 303-04 (Mo. Ct. App. 1990).

In support of their claim under the known third person theory, the Johnstons assert that the police officers patrolling the fair were agents of the Association.  They further contend that the officers had notice of the potential harm posed by Crawford and Muse and that this knowledge should be imputed to the Association.

A critical element for the existence of an agency relationship under Missouri law is that the principal has the right to control the conduct of the agent with respect to the matters entrusted to the agent.  See State ex rel. Bunting v. Koehr, 865 S.W.2d 351, 353 (Mo. 1993) (en banc) (citing Restatement (Second) of Agency § 14).  Thus, a lack of evidence showing a party's right to control or actual control over another's actions precludes the finding of an agency relationship.  See id.; Scott v. Ford Motor Credit Corp., 706 S.W.2d 453, 460 (Mo. Ct. App. 1985).

An officer who patrolled the fair testified that both the Warrenton City Police Department and the Warren County Sheriff's Department routinely patrolled the fair, as it was within their respective jurisdictions.  The Johnstons do not contend that the Association formally hired either department to perform security work, nor do they offer any evidence of the Association's actual control over the police officers.  The officers' routine patrolling of the fair was insufficient to create an agency relationship between the officers and the Association.  See Scott, 706 S.W.2d at

460.[3]

Moreover, the officers were not aware of any conduct on the part of Crawford and Muse that would have put the officers on notice that a violent assault might occur. Dennis does not allege that any officers were present when Crawford and Muse threatened him. The only information Dennis conveyed to the officers was that Crawford and Muse were bothering his wife and that he had been "having a problem with a couple of guys at [his] game earlier that night." Dennis acknowledged that he "didn't say anything about [Crawford and Muse] threatening [him]." The information the officers were given was thus insufficient to put them on notice of the potential threat of physical harm to Dennis.

The Johnstons next argue the prior violent crimes exception. They cite four crimes that occurred at the fair during the prior ten years, contending that these incidents should have put the Association on notice of the likelihood of similar violent crimes.

In holding that these incidents failed to trigger this exception, the district court found that in each of the prior incidents the participants knew (or thought they knew) each other and that the location was merely incidental to the assault. We agree with the district court that these prior incidents were insufficiently similar to the assault in the present case to serve as notice to the Association that such assaults were likely to occur. See Madden, 758 S.W.2d at 62.

---

[3]The Johnstons suggest that the Jackson employee who told Crawford and Muse to leave Dennis's game had notice of the potential of harm to Dennis, and that this notice should be imputed to the Association. This claim is unfounded, for the record is devoid of evidence of the control necessary to render the employee an agent of the Association. See Scott, 706 S.W.2d at 460.

The judgment is affirmed.[4]

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]In light of our holding, we need not consider the Association's argument that the Johnstons' exclusive remedy is under the Missouri Workers' Compensation Law.