

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| M.B., | ) | No. ED110291 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Thomas C. Albus |
| LIVE NATION WORLDWIDE, INC., and | ) | |
| LESLIE RAMSEY, | ) | |
| | ) | |
| Respondents. | ) | FILED: August 9, 2022 |

### Introduction

M.B. appeals from the circuit court's grant of summary judgment in favor of Live Nation Worldwide, Inc. ("Live Nation") and Leslie Ramsey ("Ramsey") (collectively, "Respondents"). M.B. raises three points on appeal. Point One argues the circuit court erred in finding Respondents had no legal duty to M.B. because M.B. adduced sufficient facts that Respondents assumed a legal duty to her while attending a concert at the Hollywood Casino Amphitheater operated by Live Nation. Point Two maintains the circuit court erred in finding any breach of duty was too attenuated and unforeseeable to support a finding that Respondents proximately caused M.B.'s damages. Point Three asserts the circuit court erred in finding that Respondents cannot be held liable for any medical negligence claim because M.B. brought no medical malpractice claim. As a general rule, businesses have no duty to protect an invitee from third-party criminal acts. The summary-judgment record does not establish the special facts and

circumstances required to create a duty for Respondents to protect M.B. from an off-premise sexual assault as an exception to this general rule. Accordingly, we deny Point One. Because M.B. cannot prevail on her negligence claim absent a duty of care, Point One is dispositive of the appeal, and we deny Points Two and Three. Accordingly, we affirm the circuit court's grant of summary judgment.

Factual and Procedural History

On July 17, 2016, M.B. and A.R. attended a concert together at the Hollywood Casino Amphitheater, owned and operated by Live Nation. M.B. had met A.R. earlier that year and agreed to go to the concert as friends. A.R. met M.B. at her apartment, where M.B. consumed one vodka mixed drink. A.R. then drove them to the concert in his truck. Approximately 13,000 people attended the concert, and it was a hot summer day. At the concert, M.B. drank two beers. Both beers were poured in front of M.B., and she never saw anyone place anything in the drinks while she consumed them. At some point, M.B. became very ill. M.B.'s head became foggy, and she felt extremely intoxicated. M.B. recalled vomiting near a shaved ice stand. M.B. suspected she was given a date rape drug, either by A.R. or someone else.

M.B. told A.R. that she felt sick and wanted to leave the concert early. A.R. went to get his truck from the parking lot to pick her up at the front gate. M.B. did not remember that conversation and only remembered bits and pieces of the remainder of the day because she felt drugged and kept blacking out.

While A.R. was getting his truck, M.B. was treated at the medical tent by registered nurse Chelsea Nolan ("Nurse Nolan"), who was employed by Priority EMS, an independent contractor providing services at the concert venue. Although Nurse Nolan did not specifically recall treating M.B. that day, the first-aid log completed by Nurse Nolan stated that M.B. was overheated and had overconsumed alcohol. Nurse Nolan treated M.B. with air conditioning, a

2

cold towel, and water. After determining M.B. was fit to leave the concert, Nurse Nolan released M.B., who signed herself out on the first-aid log. M.B. did not remember receiving medical treatment from Nurse Nolan or anyone else at the concert, and believed that her ability to communicate at the concert was severely compromised.

M.B. recalled sitting in a security tent located next to the medical tent. Ramsey was employed by Live Nation as its operations director and was responsible for security that day. Someone from security asked M.B. if her friend drove a truck, and M.B. said yes. Although M.B. did not recall doing so, she walked to the front gate and got into A.R.'s truck. A.R. drove them from the concert venue to M.B.'s apartment, where M.B. alleged A.R. raped her. M.B.'s friend later arrived at the apartment and believed M.B. was too impaired to have consented to sex. A.R. maintains the sex was consensual.

M.B. filed suit in the circuit court against Respondents and A.R. on August 1, 2019. A.R. was dismissed as a defendant because the circuit court found M.B.'s claim was time-barred by the statute of limitations. M.B. alleged Respondents were liable for A.R.'s sexual assault at her apartment because Respondents assumed a duty to prevent M.B. from leaving the concert with A.R. while she was under an extremely intoxicated and impaired state. Specifically, M.B. alleged that Respondents assumed a duty to provide adequate security for M.B. and to ensure she was capable of caring for her own safety before releasing her to A.R. M.B. reasoned that such legal duty included interviewing and vetting A.R. before permitting M.B. to leave with him. M.B. claimed Respondents are liable for the physical and mental damages resulting from A.R.'s alleged sexual assault at M.B.'s apartment.

During discovery, Live Nation produced its protocols related to guest safety at the venue. The protocols included providing guests with access to independently-contracted medical staff,

3

maintaining a "bullpen" area designed to temporarily hold people for security reasons, including extreme intoxication, and completing incident reports for situations in which a guest requires medical attention or is taken to the security office for violating venue rules. Live Nation's security personnel did not prepare an incident report relating to M.B.'s medical treatment. M.B. submitted deposition testimony from an expert witness in the security field opining that Respondents breached their duty of care to M.B.

Live Nation moved for summary judgment, contending that Respondents owed M.B. no duty to prevent the alleged crime that occurred at her apartment. Following briefing and argument, the circuit court granted summary judgment to Respondents. M.B. now appeals.

## Points on Appeal

Point One posits the circuit court erred in granting summary judgment in favor of Respondents because the circuit court improperly held that Respondents owed no legal duty to M.B. where M.B. properly pleaded and provided sufficient facts in the record to support the existence of an assumed duty by Respondents. Point Two argues the circuit court erred in granting summary judgment in favor of Respondents because the circuit court wrongly found that any breach of duty by the Respondents was too attenuated and unforeseeable to support a finding that Respondents proximately caused M.B.'s injuries and damages. Point Three asserts the circuit court erred in granting summary judgment in favor of Respondents because the circuit court wrongly held that Respondents cannot be held liable for medical negligence for the conduct of Priority EMS's registered nurse who provided care to M.B. where no such medical malpractice claim was raised by M.B.

## Standard of Review

4

We review a circuit court's grant of summary judgment de novo. Green v. Fotoohighiam, 606 SW 3d 113, 115 (Mo. banc 2020); see also Rule 74.04.[1] Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Id. (quoting Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011)).

We view the summary-judgment record in the light most favorable to the non-moving party, and we grant the non-moving party all reasonable inferences from the record. Id. at 116 (quoting Goerlitz, 333 S.W.3d at 453). We "are not factfinders, cannot weigh evidence, and must view inferences against the movant." Morphis v. Bass Pro Grp., LLC, 622 S.W.3d 188, 192 (Mo. App. S.D. 2021) (internal quotation omitted). We accept as true the facts contained in affidavits or otherwise in support of the motion, unless contradicted by the non-moving party's responses. Fotoohighiam, 606 S.W.3d at 116. "In addition, the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial." Bacon v. Friedman, 621 S.W.3d 170, 175 (Mo. App. E.D. 2021) (quoting Fotoohighiam, 606 S.W.3d at 116 (citing Rule 74.04(c)(2), (c)(4))). "Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are deemed admitted." Id.

The movant establishes a right to summary judgment by showing: (1) facts negating any one of the non-movant's elements; (2) that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. O'Donnell v. PNK (River City), LLC, 619 S.W.3d 162,

---

[1] All Rule references are to Mo. R. Civ. P. (2021).

166–67 (Mo. App. E.D. 2021) (internal citation omitted).  If the moving party is entitled to judgment as a matter of law, we will affirm the circuit court's grant of summary judgment. Fotoohighiam, 606 S.W.3d at 115 (quoting Goerlitz, 33 S.W.3d at 452).

Discussion

## I.  Point One—Duty of Care[2]

The primary issue dispositive of this appeal is Respondents' duty of care to M.B. as a patron and invitee of Hollywood Casino Amphitheater.  M.B. maintains Respondents were not entitled to summary judgment because the circuit court erred in finding M.B. failed to establish the requisite duty of care to support her negligence claim.  Specifically, M.B. contends Respondents assumed a duty to protect M.B. from the criminal actions of A.R. by undertaking to assist her while in an intoxicated state at the Hollywood Casino Amphitheater and then releasing M.B. to A.R. while she remained in an intoxicated, vulnerable condition such that A.R. could

---

[2] Live Nation suggests we should dismiss the appeal because M.B.'s points relied on do not conform with Rule 84.04(d)(1) and thus preserve nothing for review.  See Murphree v. Lakeshore Estates, LLC, 636 S.W.3d 622, 624 (Mo. App. E.D. 2021) (internal citation omitted).  Rule 84.04(d)(1) provides that a point on appeal must: "(A) Identify the trial court ruling or action that the appellant challenges; (B) State concisely the legal reasons for the appellant's claim of reversible error; and (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."  Here, each of M.B.'s points relied on identifies the challenged ruling and states the legal issue but fails to explain why, in the context of the case, those legal reasons support the claim of reversible error.  See Rule 84.04(d)(1); see also Murphree, 636 S.W.3d at 624 (internal quotation omitted) ("Given that a template is specifically provided for in Rule 84.04(d)(1), appellants simply have no excuse for failing to submit adequate points relied on.").  M.B. also fails to follow Rule 84.04(d)(5), which requires that "[i]mmediately following each 'Point Relied On,' the appellant shall . . . include a list of cases, not to exceed four, and the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies."  M.B. further neglects to include the required statement of preservation for each point as required by Rule 84.04(e).  We have discretion to review deficient points on appeal that are readily understandable in context of the appellant's argument sections without improperly becoming the appellant's advocate.  Scott v. King, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (internal citation omitted).  "[W]e cautiously exercise this discretion because each time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable.  It is not."  Id.  Despite the lack of contextual support from the summary-judgment record required by Rule 84.04(d)(1), we find M.B. provided this Court and Respondents adequate notice of the issues raised in the argument sections and therefore choose to exercise our discretion to review the appeal on its merits.  See id.  Respondents' request for dismissal is denied.

take her from the concert venue and later sexually assault her in her apartment. The limited issue on appeal is whether Respondents had a duty to protect M.B. from A.R.'s criminal act.[3]

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." Wieland v. Owner-Operator Servs., Inc., 540 S.W.3d 845, 848 (Mo. banc 2018) (citing L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., 75 S.W.3d 247, 257 (Mo. banc 2002)). Thus, in order to prove liability in a negligence action, a plaintiff must first establish that the defendant owed the plaintiff a duty of care that "arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." L.A.C., 75 S.W.2d at 257 (quoting Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 62 (Mo. banc 1988)). Whether there exists a duty is a question of law. Id. (internal quotation omitted). Even "[w]here the existence of a duty is established, however, it is not one to protect against every possible injury which might occur." Id. (quoting Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc., 700 S.W.2d 426, 431 (Mo. banc 1985)).

"Missouri follows the 'no duty' rule" in that under the common law, the general rule is that a business has no duty to protect an invitee from criminal acts of third persons.[4] Elkins v. Acad. I, LP, 633 S.W.3d 529, 537 (Mo. App. S.D. 2021) (citing Wieland, 540 S.W.3d at 848; K.L.S. v. Union Pac. R.R., 575 S.W.3d 259, 265 (Mo. App. W.D. 2019)); Scales v. Whitaker, 615 S.W.3d 425, 437 (Mo. App. E.D. 2020) (quoting Wieland, 540 S.W.3d at 848;

---

[3] We take M.B.'s allegations of sexual assault by A.R. as true for purposes of analyzing Respondents' duty of care.

[4] After the 2016 incident at issue, Missouri enacted the Business Premises Safety Act, which codifies the general common-law rule that a business has no duty "to guard against criminal acts or harmful acts on the premises unless the business knows or has reason to know that such acts are being committed or are reasonably likely to be committed in a particular area of the premises and sufficient time exists to prevent such crime or injury." Section 537.787.1, RSMo (Cum. Supp. 2018). The statute further outlines affirmative defenses, such as that the business had implemented reasonable security measures.

Hudson v. Riverport Performance Arts Ctr., 37 S.W.3d 261, 264 (Mo. App. E.D. 2000) (internal citation omitted); Keenan v. Miriam Found., 784 S.W.2d 298, 301 (Mo. App. E.D. 1990) (citing Madden, 758 S.W.2d at 61) (additional citations omitted). "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." Wieland, 540 S.W.3d at 848 (quoting L.A.C., 75 S.W.3d at 257). Indeed, "[t]he touchstone for the creation of a duty is foreseeability." Id. (quoting L.A.C., 75 S.W.3d at 257 (quoting Madden, 758 S.W.2d at 62)); Scales, 615 S.W.3d at 436 (quoting Lopez v. Three Rivers Elec. Co-op., Inc., 26 S.W.3d 151, 156 (Mo. banc 2000) ("[T]he concept of foreseeability is paramount in determining whether a duty exists.")). "Foreseeability is defined as the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." Scales, 615 S.W.3d at 436 (internal quotation omitted). "A mere probability is insufficient; rather, there must be the existence of a probability which would cause a reasonable person to take precautions to avoid it." Id. (internal quotation omitted). "Accordingly, while '[i]t is true that in some circumstances, one may be charged with a duty of care to take precautions to protect others from . . . criminal . . . or reckless conduct of third persons[,]' such conduct and resulting injuries must be foreseeable." Id. (internal quotation omitted).

Relevant to this appeal, the Supreme Court of Missouri has recognized "two 'special facts and circumstances' exceptions to the rule that businesses generally have no duty to protect invitees from criminal acts of third persons." Wieland, 540 S.W.3d at 848 (quoting L.A.C., 75 S.W.3d at 257). These exceptions are the "special-relationship exception" and the "special-circumstance exception." Stafford v. Drury Inns, Inc., 165 S.W.3d 494, 496 (Mo. App. E.D. 2005) (internal citation omitted).

The first exception "involves a special relationship between the parties, where one party is entrusted to the protection of another and relies on that party for safety." Elkins, 633 S.W.3d at 537 (internal citation omitted); Stafford, 165 S.W.3d at 496 (internal citation omitted). "Such relationships include innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee, but do not include the landlord-tenant relationship." Keenan, 784 S.W.2d at 302 (internal citations omitted). The special-relationship exception is grounded in Missouri case law recognizing that a defendant may assume a duty by contract or through its conduct, such that the defendant becomes "liable for injuries caused by the unsafe performance of that assumed duty." Scales, 615 S.W.3d at 438–39 (internal quotation omitted) (finding a business did not assume a duty to keep the decedent safe from being hit by a drunk driver on a public road by its conduct of providing him with social services relating to ongoing housing and mental illness issues); State v. Gargus, 462 S.W.3d 417, 424 (Mo. App. E.D. 2013) (internal citation omitted) (finding in a case of criminal negligence involving elder abuse that the defendant assumed a duty to victim by voluntarily becoming her caretaker on whom she was entirely dependent and thus had a duty to act reasonably in providing that care); see also Keenan, 784 S.W.2d at 305 (internal quotation omitted) (noting "Missouri case law supports the proposition that one who acts gratuitously or otherwise is liable for the negligent performance of the act, even though there was no duty to act").

Under the special-relationship exception, a "duty may arise when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger and sufficient time exists to prevent injury." Wieland, 540 S.W.3d at 849 (quoting L.A.C., 75 S.W.3d at 257). Critical to the special-relationship exception, no duty arises

9

unless "a business knows or has reason to know a specific third person is both (1) on its premises and (2) dangerous[.]" Wieland, 540 S.W.3d at 849 (internal citations omitted).

Turning to the second exception, "the special[-]circumstances exception deals with the foreseeability of crimes based on past incidents to create a duty of care[.]" Stafford, 165 S.W.3d at 496 (internal citation omitted). The exception applies "when a business knows or has reason to know the third person is harming or about to harm an invitee on the business's premises." Elkins, 633 S.W.3d at 537 (quoting Wieland, 540 S.W.3d at 848–49). This exception focuses on prior similar incidents and whether the business has taken precautionary measures. Wieland, 540 S.W.3d at 849 (quoting L.A.C., 75 S.W.3d at 258). Under this exception, a duty is found if the plaintiff can prove that a reasonable and prudent defendant had notice of prior acts of similar crimes such that precautions should have been taken. L.A.C., 75 S.W.3d at 259. The Supreme Court outlined this common-law approach in Madden, holding that where a plaintiff was kidnapped from a restaurant parking lot and later sexually assaulted, "[t]he restaurant was found to have a duty to protect its business invitees, because over the three-year period preceding the assault, numerous crimes were committed on the premises." Id. at 257–58 (citing Madden, 758 S.W.2d at 60); see also Richardson v. QuikTrip Corp., 81 S.W.3d 54, 62–63 n.9 (Mo. App. W.D. 2002) (en banc) (finding that Madden further established that courts may consider the totality of the circumstances in assessing the foreseeability of the criminal acts under the special-circumstances exception).

Here, M.B. argues the special-relationship exception applied and created a duty of care for Respondents to M.B. Specifically, Respondents cared for M.B. when she was in an extremely intoxicated and vulnerable condition while on the premises of the Hollywood Casino Amphitheater, and thereby assumed a duty to protect M.B. against A.R.'s sexual assault, which

10

occurred later at her apartment.  M.B.'s argument is unavailing because the summary-judgment record, even construed favorably towards M.B.'s negligence claim, does not establish a duty on the part of Respondents to protect M.B. from A.R.'s subsequent off-premises criminal act.  See Wieland, 540 S.W.3d at 848 (internal citation omitted).

In particular, the summary-judgment record contains no evidence from deposition testimony, affidavits, or other discovery suggesting that Respondents had notice that A.R. was or was likely to become a threat to M.B. as required to meet the special-relationship exception to the general no-duty rule.  See Wieland, 540 S.W.3d at 849 (internal citations omitted) (finding no duty arises under the special-relationship exception unless "a business knows or has reason to know a specific third person is both (1) on its premises and (2) dangerous").  The uncontroverted facts show that M.B. voluntarily attended the concert with A.R. as a friend, and did not report any misconduct by A.R. to Respondents or to Priority EMS, who treated her on-site for overheating and overconsumption of alcohol.  The record lacks any evidence that any other concertgoer reported A.R. to Live Nation security for any conduct related activity.  We recognize that M.B.'s friend testified by affidavit that when she went to M.B.'s apartment after the sexual assault occurred, M.B. was in no condition to have validly consented to sex.  However, the summary-judgment record contains no evidence of indicators that would have put Respondents on notice as to A.R.'s current or potential misconduct while on Respondents' premises.  See id. M.B. testified she saw her two beers being poured and did not observe A.R. or anyone else put anything in her drinks.  M.B. signed herself out from Priority EMS after being treated by Nurse Nolan.  When M.B. was with security, Respondents asked M.B. whether her friend drove a truck. M.B. said yes, and then walked to A.R.'s truck at the front gate and voluntarily left the concert with him.  The summary-judgment record contains no evidence from deposition testimony,

11

incident reports, police reports, hospitalization records, or phone records, which suggests that Respondents reasonably could have foreseen a need to take precautions to protect M.B. from leaving the concert with A.R. See Bacon, 621 S.W.3d at 175 (quoting Fotoohighiam, 606 S.W.3d at 116) (noting the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue to withstand summary judgment); Scales, 615 S.W.3d at 436 (internal quotation omitted) (requiring some probability of harm which would cause a reasonable person to take precautions to avoid it in order to establish a duty). While a business under special facts and circumstances may assume a duty of care to protect an individual from the criminal conduct of a third person, "such conduct and resulting injuries *must be foreseeable*." Scales, 615 S.W.3d at 436 (internal quotation omitted) (emphasis added).

M.B. suggests that the case at bar is similar to Keenan. See 784 S.W.2d at 304–05. We view the facts here as clearly distinguishable from those in Keenan, which affirmed a judgment for the plaintiff following a jury trial in which *the plaintiff proved the business specifically directed her to drive to its back lot to make her delivery, where she was then assaulted and had her purse stolen.* See id. In Keenan, the plaintiff demonstrated the business affirmatively directed and invited her to an area it claimed was safe, but which in fact was a place where the business knew or should have known attacks were likely to occur, given evidence introduced into the record through police reports of prior crimes. Id. Under the vastly different facts in the summary-judgment record before us, we are not persuaded that the alleged criminal conduct and resulting injuries were foreseeable here. See Scales, 615 S.W.3d at 436 (internal quotation omitted). Foreseeability of the criminal conduct and resulting injuries is the touchstone for establishing a duty on the part of Respondents to protect M.B. from A.R.'s criminal conduct

12

under the relevant common law.  See Wieland, 540 S.W.3d at 848 (quoting L.A.C., 75 S.W.3d at 257); Scales, 615 S.W.3d at 436 (internal quotation omitted).  Although M.B. alleges that Respondents should have vetted and interviewed A.R. before allowing M.B. to leave with him, the summary-judgment record contains no affirmative evidence that Respondents had any knowledge or notice of any dangerous tendencies of A.R. such that Respondents assumed or reasonably should have assumed a duty to protect M.B. from him.  See L.A.C., 75 S.W.3d at 257 (quoting Hoover's, 700 S.W.2d at 431).  The Supreme Court has found no such duty is established where "[t]here [wa]s no evidence in the record to establish that [the] defendants knew the assailant to be a violent individual or a particular threat to the safety of other persons prior to th[e] incident."  Id. at 257–58 (citing Madden, 758 S.W.2d at 62).  Consequently, no duty arises under the special-relationship exception absent some evidence to withstand summary judgment that Respondents knew or had a reason to know that M.B. was at risk of being drugged and sexually assaulted by A.R.  See Wieland, 540 S.W.3d at 849 (internal citations omitted); L.A.C., 75 S.W.3d at 257 (internal citation omitted).

To the extent M.B.'s claim of error is predicated upon judicial authority outside the scope of a business's liability for a third party's criminal acts, we reject any such other theories of negligence where the legal framework for liability for criminal acts of third parties is well-established in Missouri law.  See A.R.R. v. Tau Kappa Epsilon Fraternity, Inc., No. WD84545, 2022 WL 1085753, at *7 n.10 (Mo. App. W.D. Apr. 12, 2022) ("[W]e are not at liberty to start afresh in a landlord tenant/premises liability case where the elements which create a duty of care in such cases have already been established.").  Missouri jurisprudence has developed a clear framework to recognize two exceptions to the general rule that a business has no duty to protect a plaintiff from a third party's criminal acts.  This well-established jurisprudence has

subsequently been codified.  See Section 537.787, RSMo (Cum. Supp. 2018).  We reject M.B.'s invitation to extend the law and find that Respondents owed a legal duty to M.B. under the special-relationship exception given the facts of this case.  See Wieland, 540 S.W.3d at 849 (internal citations omitted).  Respondents are entitled to judgment as a matter of law because the summary judgment evidence before the trial court did not present sufficient facts to establish a duty on the part of Respondents to M.B. in relation to A.R.  See Fotoohighiam, 606 S.W.3d at 115 (quoting Goerlitz, 33 S.W.3d at 452).  Point One is denied.

Because a finding of no duty precludes a claim of negligence, Point One is dispositive of the appeal.  See Wieland, 540 S.W.3d at 848 (quoting L.A.C., 75 S.W.3d at 257).  Points Two and Three are denied.

Conclusion

The judgment of the circuit court is affirmed.

_____
KURT S. ODENWALD, Judge

Lisa P. Page, P.J., concurs.
Thomas C. Clark II, J., concurs.