# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2288

_____

Emilie Ostrander,                                    *
                                                     *
    Plaintiff-Appellant,                          *
                                                     *
v.                                                   *
                                                     *
Brad E. Duggan,                                      *
                                                     *
    Defendant,                                    *
                                                     *
Delta Tau Delta, Association of                      *    Appeal from the United States
Columbia, MO; Delta Tau Delta                        *    District Court for the
International,                                        *    Western District of Missouri.
                                                     *
    Defendants-Appellees,                         *
                                                     *
University of Missouri Curators, Dr.                 *
Hugh E. Stephenson; Paul W. Steele;                  *
Mary L. James; Dr. Malaika B. Horne;                 *
Paul T. Combs; Theodore C. Beckett;                  *
M. Sean McGinnis; John A. Mathes;                    *
Connie Hager Silverstein; Kathleen                   *
Miller, Secretary of the Board of                    *
Curators; and Marvin E. Wright,                      *
General; Pamela N. Sampson,                          *
Coordinator of Greek Life of the                     *
University of Missouri Columbia,                     *
in her individual capacity and in her                *
official capacity; Cathy Scroggs,                    *
Director of Department of Student                    *

Life, University of Missouri     *
Columbia, in her individual capacity     *
and in her official capacity; Charles     *
Schroeder, Vice Chancellor of     *
Student Affairs, in his individual     *
capacity and in his official capacity,     *
    *
          Defendants.     *

_____

No. 02-2960
_____

Emilie Ostrander,     *
    *
          Plaintiff-Appellant,     *
    *
       v.     *
    *
Brad E. Duggan; Delta Tau Delta,     *
Association of Columbia, MO;     *
Delta Tau Delta International,     *
    *
          Defendants,     *
    *
University of Missouri Curators, Dr.     *
Hugh E. Stephenson; Paul W. Steele;     *
Mary L. James; Dr. Malaika B. Horne;     *
Paul T. Combs; Theodore C. Beckett;     *
M. Sean McGinnis; John A. Mathes;     *
Connie Hager Silverstein; Kathleen     *
Miller, Secretary of the Board of     *
Curators; and Marvin E. Wright,     *
General,     *
    *
          Defendant-Appellee,     *

Pamela N. Sampson, Coordinator of     *
Greek Life of the University of     *
Missouri Columbia, in her individual     *
capacity and in her official capacity,     *
    *
         Defendant.     *
    *

_____

Submitted: March 12, 2003

Filed: September 3, 2003
_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

While attending the University of Missouri in Columbia, Emilie Ostrander (Ostrander) was sexually assaulted by a Delta Tau Delta fraternity member, Brad Duggan (Duggan), inside a house leased to eleven Delta Tau Delta fraternity members, and located across the street from the Delta Tau Delta chapter house. Ostrander brought suit against Duggan, Delta Tau Delta and Delta Tau Delta International (collectively DTD), the Curators of the University of Missouri (MU), and three MU officials. Before submitting the case to the jury, the district court[1] granted summary judgment in favor of DTD, and also granted MU judgment as a matter of law.[2] The jury returned a verdict in favor of Ostrander on the individual

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[2]Ostrander earlier dismissed with prejudice two of the MU officials. The third MU official received a favorable judgment as a matter of law. Ostrander does not appeal this judgment.

-3-

claims against Duggan, and awarded her $100,000 in compensatory and $200,000 in punitive damages. Ostrander appeals the court's rulings in favor of DTD and MU. We affirm.

## I.    BACKGROUND

Ostrander attended MU and was a member of the Alpha Phi sorority. In March 1998, she met Duggan at the DTD Gamma Kappa chapter house, which is owned and controlled by DTD, and located at 506 East Rollins Street on MU's campus. Ostrander invited Duggan to attend a formal hosted by the Alpha Phi sorority. Duggan attended the formal with Ostrander. During the formal, both Ostrander and Duggan became intoxicated. After the formal ended, Ostrander and Duggan went to a house located on campus at 507 East Rollins Street (507 premises), where Duggan had a room. Ostrander was familiar with the property and believed it to be the DTD annex. That evening Ostrander and Duggan had consensual sex.

A week later, on the evening of April 6, 1998, Duggan telephoned Ostrander and invited her to his room to help him stuff fraternity alumni newsletters into envelopes. Duggan was the DTD alumni chairman. Ostrander arrived at the 507 premises at approximately 9:30 p.m. After stuffing envelopes for thirty minutes, Ostrander drank two shots of what Ostrander believed was vodka. Within minutes, Ostrander experienced an intense feeling of intoxication, saw the room turn a golden haze, lost control of her limbs, and then lost consciousness. Over the next several hours, Ostrander experienced intermittent periods of consciousness during which she was aware Duggan sexually assaulted her several times, and other males in the house were observing her naked. The following morning, Ostrander left the 507 premises, but she did not report the sexual assault to the campus police until late August 1998.

In September 1998, Ostrander accompanied two female students to the Office of Greek Life, where they complained to coordinator Pam Sampson (Sampson) of sexual assaults committed by DTD fraternity members. The other two female

students alleged sexual assaults by DTD members which occurred and were reported to MU officials before Ostrander's assault. Following receipt of the complaints, Sampson and her supervisor, Laura Osteen (Osteen), met personally with the DTD local chapter advisor and informed him of the sexual assault allegations. Osteen also wrote to DTD's national president, informing him the Office of Greek Life considered the allegations extremely serious. In the letter, Osteen also expressed expectations that the local DTD chapter would thoroughly investigate the allegations and conduct in-house educational programming on sexual assault, which would be attended by at least 75% of the local chapter fraternity members.

After sending the letter, Sampson and Osteen contacted the DTD local chapter president to confirm DTD national headquarters had been notified of the alleged sexual assaults, and to determine whether the local DTD chapter was investigating the allegations and conducting the required educational programs on sexual assault. Ostrander did not hear back from Sampson and Osteen regarding what action MU had taken, and Ostrander never learned whether MU imposed sanctions on DTD.

## II. DISCUSSION

On appeal, Ostrander raises two issues. First, she contends the district court erred in ruling (1) DTD was not the possessor of the 507 premises where the sexual assault occurred, and (2) DTD lacked sufficient notice of the danger on the premises. Second, Ostrander contends the district court erred in ruling (1) discrimination based on sex did not occur within a program or activity of MU, and (2) MU officials did not act with deliberate indifference regarding complaints by female students of sexual assaults perpetrated by DTD fraternity members. We review de novo motions for summary judgment and for judgment as a matter of law, applying the same standards employed by the district court. Anderson v. N.D. State Hosp., 232 F.3d 634, 635 (8th Cir. 2000) (summary judgment); Bass v. Gen. Motors Corp., 150 F.3d 842, 845 (8th Cir. 1998) (judgment as a matter of law).

### A. Premises Liability

We first address Ostrander's premises liability claim against DTD. The record fails to establish DTD owned, possessed, or controlled the 507 premises. Since 1979, the 507 premises had been owned continuously by Robert and Donald Vanlandingham, and since the early 1990s, had been managed continuously by Hawthorne Real Estate Services, Inc. The property lease effective on the date of the sexual assault was signed by eleven individuals, including Duggan, and by an equal number of parental co-signors. DTD was not identified as a party to the lease or otherwise referred to in the lease. DTD's rules for members applied to all members, including those, like Duggan, who did not reside at the chapter house. DTD considered using the 507 premises as an annex, but had not done so. The evidence does not demonstrate DTD policed or in any way controlled the 507 premises, legally or factually.

The record also does not support Ostrander's contention she entered the 507 premises as a business invitee. Duggan invited Ostrander to the 507 premises as his social guest, and Ostrander accepted the invitation for the purpose of socializing with Duggan. Stuffing newsletters in envelopes addressed to DTD alumni was incidental to a social purpose. "The possessor's intention in offering the invitation determines the status of the visitor . . . . The fact that an invitation underlies a visit does not render the visitor an invitee for purposes of premises liability law." Carter v. Kinney, 896 S.W.2d 926, 928 (Mo. 1995).

Even assuming Ostrander raised genuine issues of material fact on the issues of possession and entrant status, she fails to satisfy the Missouri "special facts and circumstances" exception to the no duty to protect rule. To establish an owner's premises liability for failure to protect, Ostrander must show: (1) DTD had a duty to protect Ostrander from injury; (2) DTD breached that duty; and (3) the breach proximately caused Ostrander to sustain injury. Johnston v. Warren County Fair Ass'n, Inc., 110 F.3d 36, 38 (8th Cir. 1997) (interpreting Missouri law); Madden v.

-6-

C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 61 (Mo. 1988). Generally, an owner or possessor of a premises is under no duty to protect an invitee from criminal acts of third persons, because such criminal acts are rarely foreseeable. L.A.C. v. Ward Parkway Shopping Ctr. Co., 75 S.W.3d 247, 257 (Mo. 2002) (citing Madden, 758 S.W.2d at 62).

Missouri recognizes two "special facts and circumstances" exceptions to the rule that business entities have no duty to protect invitees from criminal acts committed by third persons. Id. (citing Faheen v. City Parking Corp., 734 S.W.2d 270, 272-73 (Mo. Ct. App. 1987)). Under the first exception, a "duty may arise when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger and sufficient time exists to prevent injury." Id. (quoting Faheen, 734 S.W.2d at 272-73). Under the second exception, business owners have a duty to protect invitees from the criminal acts of unknown third persons in "circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." Id. (quoting Madden, 758 S.W.2d at 62). Courts have required proof of "specific incidents of violent crimes *on the premises* that are sufficiently numerous and recent to put a defendant on notice, either actual or constructive, that there is a likelihood third persons will endanger the safety of defendant's invitees." Faheen, 734 S.W.2d at 273-74 (emphasis added).

Ostrander adduced no evidence that would cause a reasonable person to foresee injury to herself or other female visitors arising from sexual misconduct at the 507 premises. Ostrander submitted no evidence establishing, before her sexual assault, DTD knew Duggan was a violent individual or posed a particular threat to the safety of females visiting the 507 premises. Additionally, Ostrander offered no evidence establishing, before her sexual assault, any lessee of the 507 premises engaged in sexual misconduct on the 507 premises. The most DTD could have known, before Ostrander's sexual assault, was two or more DTD fraternity members, other than Duggan, had allegedly engaged in sexual misconduct during the last several years at

places other than the 507 premises. Because the alleged instances of prior sexual misconduct did not involve Duggan and did not occur on the 507 premises, we conclude such allegations, even if proved, are insufficient as a matter of law. Thus, we affirm the district court's grant of summary judgment in favor of DTD.

## B. Title IX Liability

Ostrander also appeals the district court's grant of judgment as a matter of law in favor of MU on her Title IX claim. Ostrander contends the district court erred in holding (1) sexual discrimination did not occur within a university program or activity, and (2) university officials did not act with deliberate indifference regarding complaints of violence made by female students against fraternity members. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has held Title IX provides a private cause of action against a recipient of federal funds for discrimination based on sex. Cannon v. Univ. of Chicago, 441 U.S. 677, 708-09 (1979). However, a recipient of federal funds may only be liable for damages arising from its own misconduct. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640 (1999).

For a public university "to incur liability under Title IX, it must be (1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 782 (8th Cir. 2001) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290-91 (1998) and Davis, 526 U.S. at 642). Although sexual harassment and sexual abuse clearly constitute discrimination under Title IX, Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992), a public university will only be "liable for situations in which it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" Shrum, 249 F.3d at 782 (quoting Davis, 526 U.S. at 646). Specifically, the public university's "deliberate indifference must either directly

cause the abuse to occur or make students vulnerable to such abuse, and that abuse 'must take place in a context subject to the [university's] control.'" Id. (quoting Davis, 526 U.S. at 645). See Gebser, 524 U.S. at 292-93 (declaring "we will not hold a school district liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference."); Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610 (8th Cir. 1999).

Ostrander argues the activity of DTD constitutes a program or activity of MU which receives federal funding. Ostrander further contends MU had actual notice of the exact type of sexual abuse suffered by Ostrander, and was deliberately indifferent to prior complaints by female students of sexual violence perpetrated by DTD fraternity members. MU contends Ostrander failed to produce sufficient evidence from which a reasonable jury could conclude (1) Ostrander's alleged sexual assault constituted sex discrimination in an educational program or activity; (2) MU had actual notice of sexual harassment of Ostrander or allegations of sexual harassment or abuse perpetrated by Duggan prior to the sexual assault; and (3) MU's actions in response to Ostrander's complaint showed deliberate indifference.

The record is clear MU did not own, possess, or control the 507 premises. And we have ruled Ostrander failed to offer sufficient evidence to establish the 507 premises were owned, possessed, or controlled by DTD. Thus, we need not resolve the issue whether a public university may be liable under Title IX for failure to prevent student-on-student sexual abuse occurring at fraternity or sorority premises located on the university's campus.

Even if Ostrander presented sufficient evidence of DTD's ownership, possession, or control of the 507 premises, we agree with the district court that Ostrander failed to adduce sufficient evidence that would allow a reasonable jury to find either MU had actual knowledge of the sexual abuse complained of or was deliberately indifferent to complaints of sexual violence brought by female students.

-9-

Before Ostrander's sexual assault in April 1998, no female student had reported to MU officials allegations of sexual harassment or abuse committed by Duggan, nor had any female student reported sexual harassment or abuse occurring on the 507 premises. The student-on-student sexual abuse allegedly perpetrated by DTD fraternity members, other than Duggan, at locations other than the 507 premises, fails to satisfy the "known acts" requirement outlined in Davis, 526 U.S. at 642-44.

While Ostrander was dissatisfied with MU's response to her charges and other female students' complaints of sexual violence, MU's response to allegations of sexual assaults cannot be characterized as "deliberately indifferent." After Ostrander complained to the Office of Greek Life, Sampson and Osteen met personally with the DTD chapter advisor and informed him of the allegations of sexual assault. Thereafter, Osteen wrote DTD's national president, advising him MU considered Ostrander's allegations of sexual assault to be very serious, and informing him of MU's expectation that the local DTD chapter would thoroughly investigate the allegations and sponsor an educational program to be attended by 75% of its membership. The MU officials' decision not to impose sanctions on DTD was not "clearly unreasonable." Davis, 526 U.S. at 648-49 (declaring "recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."). The district court properly granted MU's motion for judgment as a matter of law.

## III.  CONCLUSION
Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-